## Prosser, Appellant, *v.* Leatherman, Administrator, use of Hutchins.

It is a good defence to an action on a promissory note, that the note belonged to the estate of a deceased person, and that the plaintiff received it of the administrator in payment of an individual debt due by the latter, or in exchange for other property, with full knowledge of the fact.

IN error to the circuit court of Wilkinson county.

The plaintiff below brought his action on a promissory note of defendant made payable to plaintiff's intestate. The defendant plead in bar, that the note sued on came to the hands of Leatherman (the nominal plaintiff) as administrator *de bonis non,* &c. and that he held the same in no other right, and that without authority he endorsed the note to Hutchins (the real plaintiff) in a trade with said Hutchins for certain slaves, and as the only consideration for said slaves, said Hutchins well knowing all the above facts. To this plea there was a demurrer and a joinder. The demurrer was sustained, and judgment given for the plaintiff for the amount of the note. From this judgment the defendant appealed, and now assigns for error the decision of the court below, in sustaining the demurrer of the plaintiff.

Boyd, for plaintiff in error.

An executor or administrator can lawfully make no disposition of the assets of a decedent's estate, except in discharge of the claims of legatees, distributees, and creditors. His oath and bond show the limits of his powers. (Section 33—56.) The claims which he may allow, (sec. 90, 52,) must have existed "against the decedent," his testator, or intestate. All others he pays at his own risk. (Sec. 90.) The only exceptions are in sections 103, 84 and 52, and in these cases alone has he any authority to charge the assets in his hands by any act originating with himself. (8 Mass. Rep. 199, 200.) He can make no private disposition of any portion of the estate entrusted to him. (Sec. 109.)

He can make no profit and sustain no loss by a faithful discharge of the duties of his office. (Sec. 120.)

It is unnecessary to inquire, in the present case, whether persons dealing with an administrator in good faith, and ignorant of his representative character, may not, for valuable consideration, acquire title to assets improperly sold by him. The demurrer to defendant's plea admits full knowledge in the said plaintiff on record, of the facts set forth in the plea, at the time he received the note sued on.

It seems to follow, as a necessary consequence, that if the administrator could not use the process of the court for the purpose of converting to his individual use the assets of his intestate, his assignee, knowing the circumstance, can stand in no better situation. (7 John. Ch. Rep. 150—161.)

If the naming a usee in an action can enable an administrator to apply to his own purposes the choses in action belonging to his intestate, a method has been at once discovered of appropriating to his individual benefit the whole assets of an estate, and thus doing indirectly, under the sanction of the courts, what the whole policy of the law forbids him to do directly. A decision leading to such a result must be erroneous, and ought not to be sustained.

Several decisions were relied on in the court below in support of the demurrer :—Chitty on Bills, 159; 3 Wilson's Reports, 1; 8 Mass. Rep. 198.

They only sustain the position that as a matter of law, and on demurrer, the endorsement of an administrator will be recognised as passing title.

This position is not denied. The legal title is in the administrator by virtue of his office, and, as a matter of law, can only pass out of him by an endorsement. The question still remains, and cannot arise on demurrer to a declaration, whether the endorsement has been made, as it certainly may be, in pursuance of his duty as administrator, and according to the requisitions of law. For example, for the purpose of collecting, or on collecting, the amount of a note, the administrator might with propriety endorse it to other parties who are liable on it, so as to be a receipt in their favor.

Suffice it to say, that in a demurrer to a declaration nothing but

the legal sufficiency of the endorsement is in question; but on a plea, as in the present case, setting forth the facts, the circumstances under which the endorsement or transfer was made become material; and if it appear that such endorsement or transfer is not according to law, or in the due course of administration, the assignee, knowing the facts, comes in the place of the administrator, and the law applicable to the one will be applied to the other.

We rely on these principles for a reversal of the judgment below, and a final judgment in this court in favor of the appellant.

Henderson, on the same side.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

This action was brought on a promissory note made by the appellant to Ephraim Fleshman, in his life time, on whose estate the said Leatherman is administrator *de bonis non.* The appellant pleaded that the note came to the hands of Leatherman in his capacity of administrator, and without lawful authority or right he endorsed the note to Hutchins, for whose use the suit is brought, in a trade for certain negroes, and avers a knowledge on the part of Hutchins of the fact. There was a demurrer to the plea, which was sustained, and this appeal taken.

The question presented by the plea directly involves the power of an administrator to dispose of the assets, and assign the debts due him in his representative capacity, for his own use, with knowledge of the fact on the part of the purchaser. The plea is rather loosely drawn, but I think substantially good, if the subject matter is such as will support it. In regard to transactions of this kind, great contrariety of opinion has existed in the courts of England, of very high authority. The most of the cases on this subject are reviewed by Chancellor Kent, in the case of Field *v.* Schieffelin, 7 Johnson's Chancery Reports, 150. The rule as held by Lord Hardwick and Lord Mansfield, was, that an executor could dispose of the assets or choses in action of his intestate for a valuable consideration, and that the purchaser would hold, by good title unless there was fraud or collusion between the executor and purchaser, or unless a contrivance appeared between them to make a *devastavit.* Lord Kenyon condemned the decision in

[Prosser, Appellant, *v.* Leatherman, Administrator, use of Hutchins.]

one of the cases, and adopted this rule, "if upon the face of the assignment of property it appeared to have been made in satisfaction of a private debt of the executor, the sale was fraudulent against the persons interested under the will, and equity would relieve. It would be a case of implied fraud." Lord Thurlow adopted the same rule. He says that in general the purchaser has nothing to do with the application of the money, "but if one concerted with the executor to obtain the effects at a nominal price, or at a fraudulent undervalue, or in extinguishing the private debt of the executor, or in any other manner contrary to the duty of the office of executor, the purchaser or pawnee will be liable." Sir William Grant and Lord Eldon have held the same doctrine, and Chancellor Kent comes to a similar conclusion. He says "that the purchaser is safe, if he is no party to any fraud in the executor, and has no knowledge or proof that the executor intended to misapply the proceeds, or was in fact by the very transaction applying them to the extinguishing of his own private debt. The great difficulty has been to determine how far the purchaser dealt at his peril, when he knew from the very face of the proceeding that the executor was applying the assets to his own private purposes, as the payment of his debts. The latter and the better doctrine is, that in such case he does buy at his peril."

All the cases on this subject are fully discussed by Chief Justice Savage, in the case of Colt *v.* Lasneir, 9 Cowen 320, where he brings the rule as settled in England and New York down to this, " that any person receiving from an executor the assets of his testator, knowing that this disposition of them is a violation of his duty, is to be adjudged as conniving with the executor ; and that such person is responsible for the property thus received, either as a purchaser or a pledgee."

This rule seems to me to be entirely unobjectionable, either on the score of justice to all parties, or as resulting clearly and necessarily from the prescribed powers and duties of executors and administrators. It is the duty of an executor to collect the debts of the deceased and take care of the assets, and apply them to the proper objects, and the law gives the power to do this, but nothing more. He is to act in the capacity of a trustee for the benefit of those interested in the estate, but it is certainly not the policy

or intention of the law that the debts and assets in his hands should be a fund for him to trade on at pleasure for his own emolument. The creditors have a lien created by law on all the assets, and one which they have a right to enforce in the due course of administration, and which is incompatible with an indiscriminate sale or transfer of them by the executor for his own private purposes. If there are no creditors, the legatees or distributees have a direct interest in the estate, the law having directed that it should be distributed. The executor having the rightful possession of the assets, a knowledge on the part of purchaser of the illegal disposition, would of course be necessary.

As a legal proposition it surely cannot be denied that an executor or administrator may assign a note or chose in action, which he holds in that capacity, but it must be done for a purpose which will meet the sanction of law, and not for his individual benefit.

The principles as above laid down arise from cases decided in equity, and we are to consider whether the debtor may avail himself of them in an action at law. The authorities all agree that an improper transfer with the knowledge of the purchaser, imposes on him a liability in equity in favor of those interested. They evidently proceed on the ground of an express or implied fraud, which may also be enquired into at law, and courts of law will not enforce a right thus acquired. It cannot be proper, therefore, to permit a recovery in this instance, when it would impose an equitable liability on the plaintiff below, and thus change the nature of the remedy in favor of creditors and distributees, and thus far sanction a transaction which was illegal.

Although the plea does not expressly aver that the trade was made for the sole benefit of Leatherman, yet the transaction is such as to leave no other conclusion. As administrator he could not purchase negroes, and the very transaction shows the illegal application of the note. In principle there can be no difference between the transfer of a note in payment of a pre-existing debt, and a transfer for property for individual benefit. The subject matter of the plea, therefore, formed a good bar in law, and the demurrer should have been overruled and judgment of *respondeas ouster* awarded, which must be the judgment of this court.

[NOTE.—This cause was decided in 1835.]